# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

DAVID BELLARD, #428-757,   *

Plaintiff   *

v   *   Civil Action No. ELH-16-2911

DR. ROBUSTIANO BARRERA   *
DR. BILL BEEMAN, R.N.[1]
DR. MAHBOOB ASHRAF   *
KRISTA BILAK, R.N.P.
 *

Defendants

\*\*\*

## MEMORANDUM OPINION

In this civil rights action filed pursuant to 42 U.S.C. § 1983, plaintiff Darrell Bellard complains about inadequate medical care at North Branch Correctional Institution ("NBCI"). ECF 1. According to plaintiff, contractual medical personnel have subjected him to cruel and unusual punishment, in violation of the Eighth Amendment.

In particular, plaintiff alleges that he is blind in one eye, suffers from eye muscle decay in the other eye, the "eye doctor" visited him on three occasions but never examined him, and defendants have failed to provide him with eyeglasses. As a result, plaintiff asserts that he suffers from dizziness, insomnia, and headaches, has difficulty eating and using his hands, has lost his sense of direction, and has fallen on occasion. Bellard also states he is not being treated

---

[1] The Clerk shall amend the docket to reflect the proper professional designations of defendants Beeman and Bilak. The clerk shall strike "Crestpointe Corporate Center" as a party, it appearing that this entity was contained in the caption of the Complaint solely to denote a mailing address.

for his chest and back pain. ECF 1 at 8-12.[2] He seeks injunctive relief mandating that he receive eyeglasses as well as compensatory and punitive damages. ECF 1 at 12.

In response to the Complaint, defendants Robustiano Barrera, M.D.; William Beeman, R.N.; Mahboob Ashraf, M.D.; and Krista Bilak, R.N.P. (collectively, the "Medical Defendants") have moved to dismiss the Complaint or, in the alternative, for summary judgment, as supplemented. ECF 8; ECF 11. The motion is supported by a memorandum (ECF 8-1) (collectively, "Motion") and several exhibits.

Pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Clerk informed Bellard on December 6, 2016, that defendants had filed a dispositive motion; that he had seventeen days in which to file written opposition to the motion; and that if he failed to respond, summary judgment could be entered against him without further notice. ECF 9. Thereafter, on December 16, 2016, Bellard requested an opportunity to amend his "original application for the suit." ECF 10.

Months later, on April 20, 2017, plaintiff filed an Amended Complaint. ECF 13. He alleged denial of medical care based on denial of a wheelchair and cane, lack of assignment to a medical or special cell, limitation as to the amount of Ultram prescribed daily for orthopedic pain, failure to treat his hip and knee arthritis, failure to provide accommodations for his disabilities, and failure to address digestive problems caused by gunshot wounds to the abdomen. *Id.* at 3-5. According to plaintiff, his needs for effective pain management and health care were

---

[2] Page citations in this Memorandum Opinion correspond to the pagination reflected on the court's electronic docketing system.

met when he was previously incarcerated at Western Correctional Institution ("WCI"), but they are not being met at NBCI.³

Under Fed. R. Civ. P. 15(a)(1) (A) and (B), a party may amend his pleading once as a matter of course within 21 days after service of the pleading or 21 days after service of a responsive pleading, whichever is earlier. In all other cases, amendment is permitted only with the opposing party's written consent or leave of court. The Amended Complaint was not filed within 21 days of the filing of the Motion. Nor did defendants consent to the amendment, which substantially expands Bellard's medical complaint from eye problems to a plethora of unrelated medical conditions.

Bellard may file a new complaint with regard to his other ailments. But, I shall deny his request to amend his Complaint in this case, which would add a host of unrelated issues to this lawsuit.

The Medical Defendants' dispositive motion, construed as a motion for summary judgment, is ripe for disposition. No hearing is necessary to resolve it. *See* Local Rule 105.6 (D. Md. 2016). For the reasons outlined below, I will grant defendants' Motion.

### I. Standard of Review

The Medical Defendants' Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431,

---

³ Plaintiff explains that he has added these claims because his initial Complaint was prepared "in haste and with malice" by a now disgruntled jailhouse lawyer. Because the suit was not "thorough," plaintiff claims he had asked "to abort the civil action suit because [he] was not ready to proceed and there were other issues that needed to be addressed." ECF 13 at 1. However, contrary to plaintiff's assertion, in ECF 10 he expressly stated that he wanted to "make ammendments" [sic] and "to continue with [his] claim . . . ."

3

436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). When, as here, the movant expressly captions its motion "in the alternative," as one to dismiss or for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).[4]

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165-67.

---

[4] In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials.").

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont De Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

"[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party who fails to file a Rule 56(d) affidavit does so at his peril, because

5

"'the failure to file an affidavit …is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods,* 302 F.3d at 244 (citations omitted). But, the non-moving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary," and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted).

Plaintiff has not filed an affidavit under Rule 56(d). Moreover, I am satisfied that it is appropriate to address the Motion as one for summary judgment, as this will facilitate resolution of the case.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion: "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*,

477 U. S. 242, 247-48 (1986) (emphasis in original). A fact is "material" if it "might affect the outcome of the suit . . . ." *Id.* at 248.

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002); *see Roland v. United States Citizenship & Immigration Servs.*, 850 F.3d 625, 628 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *accord Guessous v. Fairview Prop. Inv., LLC,* 828 F.3d 208, 216 (4th Cir. 2016). Thus, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black &. Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility.

Nevertheless, to defeat summary judgment, conflicting evidence, if any, must give rise to a *genuine* dispute of material fact. *See Anderson*, 477 U.S. at 247-48. If "the evidence is such

7

that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id*. at 248; *see Sharif v. United Airlines, Inc.*, 841 F.3d 199, 2014 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Id.* at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*.

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corporation v. Catrett*, 477 U.S. 317, 323–24 (1986)).

## II. Factual Summary

On April 13, 2016, Bellard was transferred from WCI to NBCI. ECF 8-2 (Verified Medical Record of Darrell Bellard; ECF 8-2 at 6 (April 13, 2016 Inmate Transfer Review by William Beeman, R.N.). At the time of his transfer, Bellard reported chronic medical problems including backache, hyperlipidemia, and pain in his joints and lower leg. *Id.*

Nurse Beeman completed Bellard's medical transfer paperwork on admission to NBCI. ECF 8-2 at 6. Moreover, certain medications were administered to plaintiff between June 2016 and September 2016. *Id.* at 23-26 (Medication Administration Chart and April 13, 2016 Transfer Note by William Beeman, R.N.).

8

Five days after plaintiff's transfer to NBCI, he requested renewal of Baclofen for back spasms. ECF 8-2 at 7 (April 18, 2016 Nursing Note by Dawn Hawk, R.N.). A few days later, on April 25, 2016, Bellard was seen by Mahboob Ashraf, M.D. *Id.* at 9-10 (April 25, 2016 Provider Visit Note by Mahboob Ashraf, M.D.). Dr. Ashraf renewed Bellard's Baclofen prescription, discontinued Mobic (a nonsteroidal anti-inflammatory drug), and noted that "pt has no other concern" aside from muscular rigidity and pain in his lower back. *Id.*

On May 18, 2016, one month after plaintiff's transfer from WCI to NBCI, Bellard requested a bottom bunk ("BB"), a cane, and a medical cell, which apparently had been provided to him at WCI. *Id.* at 11 (Nursing Note by Dawn Hawk, R.N.); *see also* ECF 8-2 at 3 (May 16, 2016 Sick Call Note by Darrell Bellard). There is no indication that these requests were approved. However, on the May 16, 2016 document, in the section completed by healthcare personnel on May 18, 2016, it states: "Cane good to October. BB, Cane, Medical Cell."

On May 25, 2016, Bellard complained of severe bilateral knee pain. He stated that the pain was affecting his gait and making him unsteady. *Id.* at 13 (May 25, 2016 Nursing Note by Laura Doman, R.N.).

Bellard first requested a consult with an optometrist for new eyeglasses on June 7, 2016. *Id.* at 15-16 (June 7, 2016 Nursing Note by Ricki Moyer, R.N.); *see also* ECF 8-2 at 4 (sick call request of June 4, 2016). Dr. Ashraf examined Bellard on June 17, 2016, and stated that he would schedule Bellard for an optometry examination for his vision. *Id.* at 17-19 (June 17, 2016 Provider Chronic Care/Sick Call Note by Mahboob Ashraf, M.D.). Dr. Ashraf referred Bellard to an optometrist that same day. *Id.*

9

There is no additional record of complaints by Bellard related to his eyesight until a sick call note on October 2, 2016. ECF 8-2 at 5. At that time, plaintiff stated that the pressure in his left eye was high due to a prior traumatic injury, and that "Pred Forte" (*i.e.*, prednisolone eyedrops) was the remedy. *Id.* (October 2, 2016 Sick call Note by Bellard). Bellard claimed that the problem returned two weeks earlier, but does not happen frequently. *Id.* Plaintiff had an eye examination on October 5, 2016. ECF 8-2 at 20.

At plaintiff's next medical visit on October 23, 2016, his only complaint was chronic back pain, for which he needed medication. *Id.* at 21-22 (October 23, 2016 Provider Visit Note by Krista Bilak, R.N.P.). On November 16, 2016, Bellard was diagnosed with hyperopia and presbyopia, two common eye ailments. *Id.* at 5 (November 16, 2016 Healthcare Encounter Note (Comments Section) of October 2, 2016 Sick Call Request Form).[5] Notably, plaintiff received eyeglasses on February 1, 2017. ECF 11-1 at 3.[6]

### III. Discussion

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendant or the failure to act amounted to deliberate indifference to a serious medical

---

[5] Hyperopia is called farsightedness. It is a defect of the eye that causes light to focus behind the retina instead of directly on it, resulting in an inability to see near objects clearly. *See* https://www.google.com/#q=hyperopia+definition. Presbyopia also is a type of farsightenedness caused by loss of elasticity of the lens of the eye. It typically occurs in middle and old age. *See* https://www.google.com/#q=presbyopia.

[6] As the eyeglasses have been received, Bellard's request for injunctive relief is moot.

need. *See Estelle*, 429 U.S. at 106; *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). The Fourth Circuit has characterized the applicable standard as an "exacting" one. *Lightsey*, 775 F.3d at 178.

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed either to provide it or to ensure that the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *King*, 825 F.3d at 219. A "'serious . . . medical need'" is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Iko*, 535 F.3d at 241 (quoting *Henderson v. Sheahan,* 196 F.3d 839, 846 (7th Cir. 1999)); *see Scinto*, 841 F.3d at 228. And, in a case involving a claim of deliberate indifference to a serious medical need, the inmate must show a "significant injury." *Danser v. Stansberry*, 772 F.3d 340, 346 n.8 (4th Cir. 2014).

Proof of an objectively serious medical condition does not end the inquiry. The subjective component requires a determination as to whether the defendant acted with reckless disregard in the face of a serious medical condition, *i.e.*, with "a sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *see Farmer*, 511 U.S. at 839-40; *Scinto*, 841 F.3d at 225. Put another way, "[t]o show an Eighth Amendment violation, it is not enough that an official *should* have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Lightsey*, 775 F.3d at 178.

The Fourth Circuit has said: "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*,

11

129 F.3d 336, 340 n.2 (4th Cir. 1997); *see also Young v. City of Mt. Ranier*, 238 F.3d 567, 575-76 (4th Cir. 2001). As the *Farmer* Court explained, 511 U.S. at 837, reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." Thus, "[a]ctual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844).

Notably, deliberate indifference "is a higher standard for culpability than mere negligence or even civil recklessness" and, "as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Lightsey*, 775 F.3d at 178; *see also Scinto*, 841 F.3d at 225; *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986). What the Court said in *Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999), resonates here: "Deliberate indifference is a very high standard – a showing of mere negligence will not meet it . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences . . . To lower this threshold would thrust federal courts into the daily practices of local police departments."

Although the deliberate indifference standard "'entails more than mere negligence . . . it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *King*, 825 F.3d at 219 (quoting *Farmer*, 511 U.S. at 835). A plaintiff can meet the subjective knowledge requirement through direct evidence of a prison

12

official's actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence "'that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (quoting *Farmer*, 511 U.S. at 842).

Moreover, if a risk is obvious, a prison official "cannot hide behind an excuse that he was unaware of a risk, no matter how obvious." *Brice*, 58 F.3d at 105. In *Scinto*, 841 F.3d at 226, the Fourth Circuit said:

> A plaintiff also makes out a prima facie case of deliberate indifference when he demonstrates "that a substantial risk of [serious harm] was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official . . . had been exposed to information concerning the risk and thus must have known about it . . . ." *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (first alteration in original) (internal quotation marks omitted) (quoting *Farmer*, 511 U.S. at 842). Similarly, a prison official's "[f]ailure to respond to an inmate's known medical needs raises an inference [of] deliberate indifference to those needs." *Miltier v. Beorn*, 896 F.2d 848, 853 (4th Cir. 1990), *overruled in part on other grounds by Farmer*, 511 U.S. at 837.

Even if the requisite subjective knowledge is established, an official may still avoid liability if he "responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844; *see Scinto*, 841 F.3d at 226. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2000) (citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken)).

In essence, the treatment rendered must be so grossly incompetent or inadequate as to shock the conscience or to be intolerable to fundamental fairness. *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citation omitted) (*overruled in part on other grounds by Farmer,* 511 U.S. at

837. But, the right to treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical *necessity* and not simply that which may be considered merely *desirable.*" *Bowring v. Godwin,* 551 F.2d 44, 47-48 (4th Cir. 1977) (emphasis added). Thus, inmates do not have a constitutional right to the treatment of their choice. *Dean v. Coughlin*, 804 F.2d 207, 215 (2nd Cir. 1986). And, disagreements between an inmate and medical staff as to the need for or the appropriate extent of medical treatment do not give rise to a constitutional injury. *See Estelle*, 429 U.S. at 105-06; *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3rd Cir. 1970)); *see also Fleming v. LeFevere*, 423 F.Supp.2d 1064, 1070-71 (C.D. Cal. 2006).

The facts of this case are not in material dispute. Nothing in the Complaint suggests the medical defendants were aware that Bellard was experiencing pain as a result of the loss of his eyeglasses or, indeed, that he suffered any vision problems, or had relied on eyeglasses prior to his transfer to NBCI.

Only Dr. Ashraf knew of Bellard's request for eyeglasses, and his response clearly indicates that he was not "indifferent" to any serious medical need. To the contrary, as soon as Dr. Ashraf learned of Bellard's request for an optometry consultation, he referred him to an optometrist. And, the examination was conducted.

Further, nothing in the record confirms that Bellard complained of any injury due to a lack of eyeglasses. After plaintiff's visit with Dr. Ashraf on June 17, 2016, the medical records do not reflect any eye-related complaints until October 2, 2016, when Bellard reported pressure in his left eye that began only two weeks earlier and would be alleviated by steroids. Bellard did not complain about his eyes or vision since that visit.

### IV. Conclusion

14

Defendants have provided constitutionally adequate medical care with regard to Bellard's eye care, and are entitled to summary judgment in this case.[7]  A separate Order follows.

May 11, 2017                                              _____/s/_____
Date                                                              Ellen L. Hollander
                                                                     United States District Judge

---

[7] Because the Medical Defendants are entitled to summary judgment, the court declines to address their qualified immunity argument.